# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANE GAJEWSKI, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 02 C 454 |
| ) | |
| COLDWELL BANKER RESIDENTIAL ) | |
| REAL ESTATE, INC., ) | |
|     Defendant. ) | |

## MEMORANDUM AND ORDER

Pro se plaintiff Jane Gajewski contends that her former employer, Coldwell Banker, failed to accommodate her and unlawfully terminated her due to an alleged disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and sexually harassed and retaliated against her in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. Coldwell Banker's motion for summary judgment is before the court. For the following reasons, the motion is granted in its entirety.

**I.    Background**

    **A.    Ms. Gajewski's Failure to File a Response**

On May 5, 2005, the court granted Ms. Gajewski's request (made via a call to the court's clerk) for an extension of the briefing schedule, but noted that any requests for an extension of the briefing schedule had to be made in writing and motions based on an alleged physical inability to prepare a response had to be accompanied by a letter from Ms. Gajewski's physician. The court also warned Ms. Gajewski that this was a final extension and that the court would rule without the benefit of her views if she did not file a response.

After her response was due, Ms. Gajewski nevertheless telephoned the court to advise it that she could not type and thus could not prepare a response. She also asked the court to

appoint counsel to assist her. On July 6, 2005, the court issued an order discussing the appointment of counsel issue in detail and concluded that appointing counsel had lengthened the proceedings, had not aided the truth-seeking process, and that appointment of an additional lawyer for Ms. Gajewski was not warranted given her inability to maintain a working relationship with any of her prior appointed lawyers, all of whom had provided a high level of representation to Ms. Gajewski for as long as possible.

The court concluded by stating:

> This leaves the court with a motion for summary judgment and no response from Ms. Gajewski. The court clearly and unambiguously warned Ms. Gajewski that if she believed she was physically unable to prepare a response, she would have to provide the court with a letter from her physician as opposed to calling the court's clerk. The court finds that Ms. Gajewski's ability to repeatedly call the court shows that she was also able to call her doctor, and that she was on notice that if she could not file a response by the date set by the court, the court would rule without the benefit of her views if she did not provide a doctor's letter. While the court has attempted to give Ms. Gajewski every concession with respect to her health, the court cannot delay resolution of this case forever. Accordingly, the defendant is directed to file its summary judgment motion (which has been served on Ms. Gajewski) by July 11, 2005, so that the court can address the motion on the merits.

In response to that order, Ms. Gajewski faxed a typed note to the court stating that she could not provide a doctor's note.[1] The court has given Ms. Gajewski literally months to respond and has repeatedly warned her that if she felt that she was physically or mentally unable to prepare a response, she would have to provide the court with a doctor's note. The court finds that Ms. Gajewski's attempt to obtain a note is too little, too late.

---

[1] Ms. Gajewski does not appear to have provided counsel for Coldwell Banker with a copy of her faxed note. Ms. Gajewski is advised that in the future, she must give Coldwell Banker a copy of anything she sends to the court. In addition, the clerk is directed to file the letter to ensure that the record is complete.

While the court has attempted to give Ms. Gajewski every concession with respect to her health and her pro se status, no litigant is entitled to ignore repeated warnings from the court and to attempt to follow the court's orders only when the litigant believes the court has reached the end of its rope. The court also notes that Ms. Gajewski's alleged inability to type is belied by the fact that she typed her faxed note, even though the court's clerk advised Ms. Gajewski that she was welcome to file a hand-written response. Moreover, the bulk of Coldwell Banker's Rule 56 statement is based on Ms. Gajewski's deposition, when she was represented. In short, the court cannot delay resolution of this case forever. For the reasons previously stated, it believes that appointing an additional lawyer for Ms. Gajewski will not help matters, and thus turns to the impact that Ms. Gajewski's failure to respond has on Coldwell Banker's motion.

Local Rule 56.1(b) requires that the responding party submit a "concise response" to the movant's statement, which must contain "[a] response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to affidavits, parts of the record, and other supporting materials relied upon…." Local Rule 56.1(b)(3)(A). It also provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id*.

A party who does not properly contest the opposing party's Rule 56.1(a)(3) facts is considered to have admitted those facts to the extent that they are properly supported by the record. *Id*.; *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1312 (7th Cir. 1995); *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993). The court thus deems the facts in Coldwell

Banker's statement of facts admitted. It will, however, carefully review everything in the record due to Ms. Gajewski's current pro se status in an attempt to ensure that its ruling is as correct and fair as possible given the circumstances.

### B. Ms. Gajewski's Employment at Coldwell Banker

On May 22, 2000, Coldwell Banker hired Ms. Gajewski for the position of marketing assistant. Her duties consisted of creating brochure packets, flyers and postcards for the sales associates, creating and maintaining files for the sales agents, and photocopying and performing general bindery work as necessary. Linda DeNovi was Ms. Gajewski's immediate supervisor. DeNovi reported to Ann Barnicle, Branch Manager of Coldwell Banker's Northwest Office. Ann Barnicle reported to Fran Broude, who, at the relevant time, was Regional Vice President for Coldwell Banker, Northwest Region.

Around the time that Ms. Gajewski began working at Coldwell Banker, she and Clinton Harman, her co-worker and fellow marketing assistant, began to have a sexual relationship. On July 13, 2000, less than two months after Ms. Gajewski began working at Coldwell Banker, she accused Mr. Harman of sexually harassing her. Coldwell Banker did not find out about this purported harassment from Ms. Gajewski herself. Instead, it learned of Ms. Gajewski's allegations when Mr. Harman called his supervisor on the telephone to report that Ms. Gajewski was accusing him of sexual harassment.

Specifically, Ms. Gajewski accused Mr. Harman of telling her that she had to have sex with him or she would be fired. At her deposition, although Ms. Gajewski stated that Mr. Harman "acted like a boss," she did not know what authority, if any, he had at the company. The record shows that Mr. Harman, like Ms. Gajewski, was a marketing assistant. In addition,

- 4 -

Ms. Gajewski's supervisors all testified that Mr. Harman was a co-worker of Ms. Gajewski and had no supervisory power over her.

Ms. Gajewski conceded that Coldwell Banker promptly investigated her claims of harassment. Mr. Harman told his superiors at Coldwell Banker that he felt his involvement and his sexual relationship with Ms. Gajewski was consensual and that he never told her she would lose her job if she did not engage in sexual intercourse with him. During the investigation, Mr. Harman's supervisors reprimanded him, repeatedly told him that Coldwell Banker does not tolerate sexual harassment in any form, and warned him that he would be subject to termination if any additional complaints were made against him. At the conclusion of the investigation, Ms. Gajewski's supervisors found that Mr. Harman's version of the events was more credible. Regardless of the parties' divergent views on the consensual nature of the relationship between Ms. Gajewski and Mr. Harman, it is undisputed that after Coldwell Banker investigated the matter, there were no further incidents.

Mr. Harman had nothing to do with Coldwell Banker's subsequent decision to terminate Ms. Gajewski. Instead, Ms. Gajewski's supervisors, Fran Broude and Ms. DeNovi, decided to terminate Ms. Gajewski. According to Ms. Broude and Ms. DeNovi, they terminated Ms. Gajewski due to her poor performance. At her deposition, Ms. Gajewski was unable to point to anything specific that indicated that she was terminated because she complained about Mr. Harman. Gajewski Dep. at 214.

**C.     Ms. Gajewski's Claim of Disability Discrimination**

Ms. Gajewski contends that she was disabled after she suffered an on-the-job injury to her neck on May 31, 2000. According to Ms. Gajewski, she never told anyone at Coldwell Banker that she was experiencing neck pain due to an on-the-job injury. Instead, Coldwell

Banker learned of Ms. Gajewski's neck problems (although not their alleged cause) when Ms. Gajewski walked into work late on July 17, 2000, gave Ms. DeNovi a prescription for physical therapy, and stated that she was suffering from paralysis of her face and arms.

Ms. Gajewski also told Ms. DeNovi that she needed to go to a doctor's appointment that afternoon. When Ms. Gajewski went to the doctor, her doctor told her that she could return to work the next day, and Ms. Gajewski did so. In addition, on the day that Ms. Gajewski came to work in the cervical collar, Ann Barnicle, Coldwell Banker's Branch Manager, contacted Ms. Gajewski's treating physician, Dr. Benjamin LeCompte. Dr. LeCompte denied that Ms. Gajewski was suffering any paralysis and told Ms. Barnicle that Ms. Gajewski was capable of performing her job.

In Ms. Gajewski's complaint, she alleged that Coldwell Banker refused to accommodate her disability. Ms. Gajewski, however, admitted that the only request that she made to Coldwell Banker was to ask Ms. DeNovi for someone to help her with the binding machine, and she cannot recall when she made this request. Ms. DeNovi helped Ms. Gajewski "bind some stuff" and also "helped [her] out a lot. " As far as Ms. Gajewski's supervisors knew, Ms. Gajewski was physically able to perform the essential functions of her job as marketing assistant on a daily basis at all times during her employment with Coldwell Banker.

Ms. Gajewski never gave any documentation to Coldwell Banker regarding any alleged disability, other than a prescription for physical therapy. The physical therapy prescription did not state that Ms. Gajewski needed to be absent from work, and did not give any indication as to the length or type of therapy or any restrictions on Ms. Gajewski's ability to work. Instead, it was a doctor's prescription stating that Ms. Gajewski needed therapy. Ms. Gajewski admitted that Coldwell Banker never had any of her medical records reflecting a history of any type of

disability. Before or while she was employed by Coldwell Banker, Ms. Gajewski never told anyone there that she had a physical or mental impairment that substantially limited her ability to work or perform other major life activities or that she required an accommodation in order to perform the essential functions of her job.

Ms. Gajewski admitted that Ms. DeNovi never said anything hostile about Ms. Gajewski's physical condition and never said anything that would indicate that she wanted to have Ms. Gajewski terminated because of her physical condition. Fran Broude, who at the relevant time was Regional Vice President for Coldwell Banker, Northwest Region, told Ms. Gajewski that she was being terminated. Ms. Gajewski testified that she did not know if Ms. Broude knew anything about her physical condition when Ms. Broude terminated her. At her deposition, Ms. Gajewski was unable to point to any specific evidence supporting her contention that she was fired as a result of having a physical problem or alleged disability.

### D. Ms. Gajewski's Termination

Coldwell Banker hired Ms. Gajewski to replace Ryan Abrams, a part-time marketing assistant. Mr. Abrams assisted in training Ms. Gajewski prior to his departure. Mr. Abrams complained that Ms. Gajewski was a slow learner and that she did not catch on quickly. After Mr. Abrams left Coldwell Banker, Ms. Gajewski worked with Mr. Harman in the marketing department for Coldwell Banker's Northwest branch office. Harman was supposed to help train Ms. Gajewski in her duties as a marketing assistant. Harman found that training Ms. Gajewski was a difficult task, because he felt that she had a difficult time accepting constructive criticism. Jeane Williams, a broker at Coldwell Banker, told Ms. DeNovi that Ms. Gajewski had a difficult time learning how to fulfill her duties as a marketing assistant.

As Marketing Service Center Director, all complaints regarding Ms. Gajewski's performance were directed to Ms. DeNovi. Ms. DeNovi noticed that Ms. Gajewski was unable to grasp the essential functions of her job, because one day she would "get it" and the next day she could not remember what she had learned the previous day. On June 2, 2000, Ms. DeNovi met with Mr. Harman and Ms. Gajewski regarding Ms. Gajewski's performance as a marketing assistant. After that meeting, Mr. Harman created a "cheat sheet" for Ms. Gajewski, which was a set of written instructions detailing the basic tasks Ms. Gajewski needed to do to perform her duties as a marketing assistant. Ms. DeNovi also agreed that Coldwell Banker would pay for a course at a local college in order to help Ms. Gajewski try to improve her skills.

During the time Ms. Gajewski was employed at Coldwell Banker, she often missed days of work, came to work late or left early. Both Mr. Harman and Ms. DeNovi had to cover much of Ms. Gajewski's workload as a result of her absenteeism.

On July 18, 2000, Ms. Broude and Ms. DeNovi decided to terminate Ms. Gajewski due to the continuing complaints from Ms. DeNovi and Ms. Gajewski's co-workers regarding Ms. Gajewski's work performance, her excessive unexcused absences, and her failure to meet Coldwell Banker's expectations in performing the duties of a marketing assistant. Ms. Broude called Ms. Gajewski at her home via telephone to inform her that she was discharged from Coldwell Banker because of her poor performance, explaining that Ms. Gajewski was a "dismal" employee. Ms. Gajewski admitted that she respected Ms. Broude and that she did not feel that Ms. Broude had any ill-will towards her. Ms. Gajewski also admitted that Ms. Broude expressed an honest opinion when she said that she thought Ms. Gajewski was a "dismal" employee.

## II. Discussion

### A. Standard on a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex, Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a "genuine" material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 322.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### B. Ms. Gajewski's ADA Claim

The ADA protects "qualified individuals with a disability" from discrimination in employment, the hiring process, or promotions. 42 U.S.C. § 12112(a). The statute defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Construed broadly, Ms. Gajewski's complaint asserts that Coldwell Banker violated the ADA by: (1) discriminating against her due to her alleged disability, and (2) failing to accommodate her alleged disability. To establish a prima facie case for both of these claims, Ms. Gajewski must, among other things, establish that she is disabled within the meaning of the ADA. *See Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005) (to establish a prima facie case for discrimination under the ADA, the plaintiff must point to evidence that, if believed, would show that: (1) she is disabled within the meaning of the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment); *see also Dvorak v. Mostardi Platt Assocs.*, 289 F.3d 479, 483 (7th Cir. 2002) (to state a prima facie case of failure to accommodate a disability under the ADA, a plaintiff must show: (1) she was or is disabled; (2) her employer was aware of her disability; (3) she was otherwise qualified for her job; and (4) the disability caused the adverse employment action).

An individual can prove that she is disabled for the purposes of the ADA by showing that: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such an impairment; or (3) she is regarded as having such an impairment by her employer. 42 U.S.C. § 12102(2); *Sutton v. United Air Lines*, 527 U.S. 471,

478 (1999). As discussed below, the record shows that Ms. Gajewski cannot satisfy any of these prongs.

With respect to the first method, to be disabled, an individual must be so limited in one or more major life activities that she is impaired in her ability to "perform the variety of tasks central to most people's lives." *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 201 (2002). Here, Ms. Gajewski appears to be arguing that her alleged neck problem prevented her from performing the major life activity of working. The record, however, does not support this contention. Ms. Gajewski's doctor said she was able to work, and Ms. Gajewski did not miss any time from work due to her injury except the time needed to visit the doctor. In any event, an individual who is suffering from a temporary medical condition is not disabled under the ADA. *See Sutton v. United Air Lines, Inc.*, 527 U.S. at 482.

It is true that Ms. Gajewski contended during her deposition that her alleged neck problem caused her to have problems with the binding machine. Importantly, however, the inability to perform a particular job does not normally "constitute a substantial limitation in the major life activity of working." 29 C.F.R § 1630.2(j)(3)(i). Based on the record before the court, it is clear that Ms. Gajewski was able to work and "perform the tasks central to most people's lives, and this in itself dooms [her] claim that [she] is actually suffering from a disability cognizable under the ADA." *See Rooney v. Koch Air, LLC*, 410 F.3d at 381.

Ms. Gajewski also cannot demonstrate that she has a record of a disability. *See* 42 U.S.C. § 12102(2)(B). To succeed under this theory, Ms. Gajewski must again show that her impairment "substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). The only evidence documenting Ms. Gajewski's alleged disability is the physical therapy prescription and Ms. Gajewski's doctor's denial that Ms. Gajewski was suffering any paralysis

and his opinion that she was capable of performing her job. The prescription does not support an inference that Ms. Gajewski was unable to work, and her doctor's affirmative statement that she was capable of working completely fails to support a conclusion that she was substantially limited in the major life activity of working.

The fact that Ms. Gajewski asked Ms. DeNovi to help her with the binding machine does not alter this conclusion. Ms. DeNovi helped Ms. Gajewski with the machine and "helped [her] out a lot[.]" Ms. Gajewski never told her supervisors that she was incapacitated (with the exception of her claim that she was paralyzed, which her doctor flatly denied). Thus, the record shows that at best, Gajewski's supervisors knew that Ms. Gajewski had some sort of temporary condition but was, per her treating physician, capable of performing the duties of her job. This is simply not enough to establish a record of a disability.

This brings the court to the third way to establish disability under the ADA: the "regarded as disabled" test. *See* 42 U.S.C. § 12102(2)(C). "A person is 'regarded as disabled' when the employer, rightly or wrongly, believes that she has an impairment that substantially limits one or more major life activities." *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004), *citing Sutton v. United Air Lines, Inc.*, 527 U.S. at 489. If the condition at issue is not substantially limiting, and the employer does not believe that it is, then the employee is not disabled under the "regarded as" prong of the statute. *See Rooney v. Koch Air, LLC*, 410 F.3d at 381. That is the case here, as it is beyond peradventure that no one at Coldwell Banker ever thought that Ms. Gajewski was disabled (except for perhaps the brief few minutes between Ms. Gajewski's arrival at work wearing a cervical collar and complaining of paralysis and her supervisor's immediate call to Ms. Gajewski's doctor, who expressly stated that Ms. Gajweski was not paralyzed and was physically able to work).

In sum, Ms. Gajewski's statements at her deposition show that she did not have a disability within the meaning of the ADA. As this is the first prong of a prima facie case of discrimination, Coldwell Banker is entitled to summary judgment as to Ms. Gajewski's disability claim.

### C. Ms. Gajewski's Title VII Claim

Coldwell Banker contends that even if the court accepts Ms. Gajewski's version of the relationship between her and Clinton Harman, (*i.e.*, that he coerced her into having sex with him), there is no basis for imposing employer liability. As noted above, Mr. Harman was Ms. Gajewski's peer and had the same job title and responsibilities as Ms. Gajewski. Moreover, during her deposition, Ms. Gajweski was unable to point to any evidence showing that Mr. Harman had any sort of supervisory authority over her. Indeed, although Ms. Gajewski claimed that Mr. Harman "acted like a boss" at Coldwell Banker, she did not know what his actual position was. In addition, there is ample evidence regarding the chain-of-command over Ms. Gajewski, which did not include Mr. Harmon. The court thus finds that Mr. Harmon was Ms. Gajewski's peer, as opposed to a supervisor.

Generally, an employer may raise an affirmative defense to a claim of harassment under Title VII by showing that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). More specifically, when, as in this case, the plaintiff claims that a co-worker harassed her, an employer can be liable only if it was negligent either in discovering or remedying the harassment. *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 952-53 (7th Cir. 2005). An employer satisfies its legal duty in

co-worker harassment cases if it takes reasonable steps to discover and address incidences of co-worker harassment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Coldwell Banker argues that even assuming that Mr. Harman's conduct rose to the level of actionable sexual harassment, it cannot be liable as a matter of law for this purported co-worker harassment because no evidence shows that it knew of or should have known of the situation and failed to take prompt remedial action once it found out. The court agrees with Coldwell Banker that notice or knowledge by the employer of harassment is a prerequisite for liability. Thus, "a plaintiff cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998).

Here, Ms. Gajewski did not bring the alleged harassment to her supervisor's attention until after Mr. Harman told Ms. DeNovi that Ms. Gajewski had accused him of sexual harassment. The record does not show what sort of complaint mechanism was in place at Coldwell Banker, but Ms. Gajewski has never argued that whatever mechanism may have existed was insufficient. At her deposition, Ms. Gajewski did not dispute that Coldwell Banker did not know and could not have known about the purported harassment until Mr. Harman came forward.

Once Mr. Harmon did so, Coldwell Banker was on notice of the situation and became obligated to take appropriate remedial action. *See Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d at 1032. Ms. Barnicle and Ms. DeNovi promptly interviewed Mr. Harman and the next day, Mr. Harman submitted a typed statement regarding the incident, which Coldwell Banker

officials found was credible. No further harassment occurred after Coldwell Banker investigated the matter and admonished Harman, and Ms. Gajewski has not brought any alleged deficiencies with Coldwell Banker's follow up to the court's attention. Moreover, after Coldwell Banker completed its investigation of the alleged harassment, Ms. Gajweski never complained about any other sexual harassment or other inappropriate conduct committed by Harman or anyone else.

The fact that Coldwell Banker investigated and dealt with the alleged harassment once it knew about Ms. Gajewski's and Mr. Harmon's relationship, coupled with Ms. Gajewski's failure to point to any evidence supporting an inference that Coldwell Banker's actions were insufficient, means that Coldwell Banker satisfied its duty to take reasonable steps to discover and address incidences of co-worker harassment. *See Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d at 1032. Accordingly, Coldwell Banker is entitled to summary judgment as to Ms. Gajewski's sexual harassment claim.

### D. Ms. Gajewski's Retaliation Claim

Ms. Gajewski also has asserted that Coldwell Banker terminated her because she reported that she had been a victim of sexual harassment. The record shows that Ms. Gajewski's supervisors, Ms. Broude and Ms. DeNovi, decided to terminate Ms. Gajewski's employment due to the continuing complaints about Ms. Gajewski's work performance, her excessive unexcused absences, and her failure to meet Coldwell Banker's expectations in performing the duties of a marketing assistant.

The complaints about Ms. Gajewski's performance largely predate her claims of discrimination. Indeed, co-workers expressed reservations about Ms. Gajewski's abilities from virtually the moment she began to work at Coldwell Banker. The timing of the complaints, even when viewed in the light most favorable to Ms. Gajewski, suggests that Coldwell Banker

decided to fire Ms. Gajewski because of its perceptions about her job performance, as opposed to her complaint of sexual harassment.

The court need not delve further into Coldwell Banker's motivation, however, as at her deposition, Ms. Gajewski conceded that Ms. Broude expressed an honest opinion when she said that she thought Ms. Gajewski was a "dismal" employee. Ms. Gajweski also admitted that she could not point to anything specific that indicated that she was terminated because she complained about Mr. Harman. Because this evidence shows that Coldwell Banker would have terminated Ms. Gajewski's employment regardless of Ms. Gajewski's complaint of sexual harassment, Coldwell Banker is entitled to summary judgment on Ms. Gajewski's retaliation claim. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998).

## III. Conclusion

For the above reasons, Coldwell Banker's motion for summary judgment is granted as to all of Ms. Gajewski's claims. The clerk is directed to enter a Rule 58 judgment and to terminate this case.

DATE: July 13, 2005

_____
Blanche M. Manning
United States District Judge